1

2

3

4

5

6

7

```
                                  FILED
                         CLERK, U.S. DISTRICT COURT

                           12/23/25

                       CENTRAL DISTRICT OF CALIFORNIA
                       BY: _____ MRV _____ DEPUTY
```

8             UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10            October 2025 Grand Jury

| | |
|---|---|
| 11 UNITED STATES OF AMERICA, | CR 2:25-cr-01022-MWF |
| 12       Plaintiff, | I N D I C T M E N T |
| 13       v. | [18 U.S.C. § 2332a: Conspiracy to |
| 14 AUDREY ILLEENE CARROLL, | Use Weapon of Mass Destruction; 18 U.S.C. § 2339A: Providing and |
|   aka "Asiginaak," | Attempting to Provide Material |
| 15   aka "Black Moon," | Support to Terrorists; 26 U.S.C. |
| ZACHARY AARON PAGE, | § 5861(d): Possession of |
| 16   aka "AK," | Unregistered Firearms; 18 U.S.C. |
|   aka "Ash Kerrigan," | §§ 981(a)(1)(C), (a)(1)(G), 26 |
| 17   aka "Cthulu's Daughter," | U.S.C. §§ 5872, 7302, and 28 |
| DANTE JAMES ANTHONY-GAFFIELD, | U.S.C. § 2461(c): Criminal |
| 18   aka "Nomad," | Forfeiture] |
| TINA LAI, | |
| 19   aka "Kickwhere," | |
| 20       Defendants. | |

21

22     The Grand Jury charges:

23 INTRODUCTORY ALLEGATIONS

24     At all times relevant to this Indictment:

25     1.   Defendants AUDREY ILLEENE CARROLL, also known as ("aka")

26 "Asiginaak," aka "Black Moon," ZACHARY AARON PAGE, aka "AK," aka "Ash

27 Kerrigan," aka "Cthulu's Daughter," DANTE JAMES ANTHONY-GAFFIELD, aka

28 "Nomad," and TINA LAI, aka "Kickwhere," were members of a group

called the "Turtle Island Liberation Front" ("TILF"), which,
according to public posts and other open-source information, is an
anti-capitalist and anti-government movement.  Defendants were also
members of what defendant CARROLL characterized as a "radical"
faction of TILF, who communicated using an encrypted messaging group
called "Order of the Black Lotus."

2.    No later than November 2025, defendant CARROLL drafted an
eight-page, handwritten document titled "OPERATION MIDNIGHT SUN" that
described a bombing plot targeting U.S. businesses, engaged in both
interstate and foreign commerce, across Southern California on New
Year's Eve 2025 (hereinafter the "New Year's Eve Bombing Plot").
Among other things, the plot included details on the co-conspirators'
intended targets (or "marks"), instructions on how to manufacture the
explosive bombs and source the bomb-making materials, and guidance
for the co-conspirators to avoid leaving evidence behind that could
be traced back to the co-conspirators.  The New Year's Eve Bombing
Plot was designed to "completely pulverize" the targets, which
included technology and logistic companies with offices across
Southern California.

3.    After drafting the New Year's Eve Bombing Plot, defendant
CARROLL recruited others to join the attack plan, including
defendants PAGE, GAFFIELD, and LAI.

4.    As alleged below, throughout early December 2025,
defendants CARROLL, PAGE, GAFFIELD, and LAI took steps to procure
bomb-making materials to build and test explosive devices in the
Mojave Desert on December 12, 2025, including by obtaining
bomb-making materials, such as potassium nitrate, sulfur, charcoal,
and pipes.

5.   During the conspiracy alleged in Count One, defendants CARROLL and PAGE also described plans they intended to implement following the New Year's Eve bombings, including their plans to target U.S. Immigration and Customs Enforcement ("ICE") agents and vehicles with firearms and pipe bombs to "take some of them out and . . . scare the rest of them."

6.   On December 12, 2025, defendants CARROLL, PAGE, GAFFIELD, and LAI traveled to the Mojave Desert to build and test explosive devices, which the co-conspirators planned to use in the New Year's Eve Bombing Plot.

//

//

//

1        COUNT ONE

2        [18 U.S.C. § 2332a]

3        [DEFENDANTS CARROLL and PAGE]

4        Paragraphs 1 through 6 of the Introductory Allegations of this

5 Indictment are re-alleged and incorporated here.

6 A.   OBJECT OF THE CONSPIRACY

7        Beginning on a date unknown and continuing through on or about

8 December 12, 2025, in Los Angeles County, within the Central District

9 of California, and elsewhere, defendants AUDREY ILLEENE CARROLL, also

10 known as ("aka") "Asiginaak," aka "Black Moon," and ZACHARY AARON

11 PAGE, aka "AK," aka "Ash Kerrigan," aka "Cthulu's Daughter," acting

12 without lawful authority, conspired and agreed with others known and

13 unknown, to use a weapon of mass destruction against any person or

14 property within the United States and such property was used in

15 interstate and foreign commerce and in an activity that affected

16 interstate and foreign commerce, in violation of Title 18, United

17 States Code, Section 2332a.

18 B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

19      ACCOMPLISHED

20        The object of the conspiracy was to be accomplished in substance

21 as follows:

22        1.   Defendants CARROLL and PAGE would research ways to build

23 explosive bombs, including "pipe bombs," "complex pipe bombs," and

24 Molotov cocktails.

25        2.   Defendant CARROLL would draft multiple written plans to

26 attack businesses within the Central District of California with

27 explosive devices and Molotov cocktails, including the New Year's Eve

28 Bombing Plot.

3.    Defendants CARROLL and PAGE, and co-conspirators known and unknown, would recruit others, including defendants DANTE JAMES ANTHONY-GAFFIELD, aka "Nomad," and TINA LAI, aka "Kickwhere," to manufacture explosive bombs in furtherance of the New Year's Eve Bombing Plot.

4.    Defendants CARROLL and PAGE, and others known and unknown, would use an encrypted messaging application to communicate with each other in furtherance of the bombing plot, and would take steps to conceal their communications, including setting their messages to automatically delete.

5.    Defendants CARROLL and PAGE, and others known and unknown, would discuss procuring and/or procure the bomb-making materials, including large quantities of potassium nitrate, sulfur, charcoal, PVC pipe, and materials to use as fuses.

6.    Defendants CARROLL and PAGE, and others known and unknown, would travel to the Mojave Desert to build and test improvised explosive devices on or about December 12, 2025.

7.    Defendants CARROLL, PAGE, GAFFIELD, and LAI would take steps toward constructing improvised explosive devices on December 12, 2025 before members of the Federal Bureau of Investigation's Hostage Rescue Team intervened and arrested defendants CARROLL, PAGE, GAFFIELD, and LAI.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants CARROLL and PAGE, and co-conspirators known and unknown, committed various overt acts in Los Angeles County, within the Central District of California, and elsewhere, including, but not limited to, the following:

1    <u>Overt Act No. 1:</u>   On November 24, 2025, defendant CARROLL,

2    using an encrypted messaging application, messaged someone defendant

3    CARROLL believed was a co-conspirator, but who was, in fact, a

4    confidential human source working with law enforcement (the "CHS"),

5    stating that defendant CARROLL and "4 comrades" were planning to go

6    to the desert from December 11 to December 13, 2025 to "test[] the

7    items we're going to use for those party plans".

8    <u>Overt Act No. 2:</u>   No later than November 26, 2025, defendant

9    CARROLL created multiple handwritten copies of an eight-page document

10   titled "Operation Midnight Sun" that described a bombing plot (<u>i.e.</u>,

11   the New Year's Eve Bombing Plot).  The plot included details on

12   intended targets (listed as "marks"), instructions on how to

13   manufacture the explosive bombs and source the bomb-making materials,

14   and guidance on how the co-conspirators could avoid leaving evidence

15   behind that could be traced back to the co-conspirators.  In the

16   bombing plan, defendant CARROLL instructed co-conspirators that "once

17   you've planted your ieds if there is any time to safely do so, dump

18   an excelarant [sic] around the premises such as gasoline for added

19   effect. We want to do as much damage as possible."

20   <u>Overt Act No. 3:</u>   On November 26, 2025, defendant CARROLL,

21   using an encrypted messaging application, messaged co-conspirators,

22   including defendant PAGE, instructions for an in-person meeting to

23   discuss the New Year's Eve Bombing Plot and instructed the

24   co-conspirators to "[w]ear cas bloc. No devices, if you can't leave

25   it at home have it turned off and wrapped in tinfoil (makeshift

26   faraday bag)".

27   <u>Overt Act No. 4:</u>   On November 26, 2025, defendant CARROLL

28   distributed the written New Year's Eve Bombing Plot to defendant PAGE

1  and the CHS, explaining that the document was handwritten because

2  defendant CARROLL did not want any traces of the attack plan on a

3  computer.

4      Overt Act No. 5:    Following the in-person meeting on November

5  26, 2025, defendant CARROLL, using an encrypted messaging

6  application, messaged the CHS that "this trip is very spicy LOL we'll

7  be testing the things we're gonna make for December, like the things

8  in the instructions on that document I gave you. Testing first is

9  important so we know how well they work lol."

10     Overt Act No. 6:    On November 29, 2025, defendant PAGE, using

11 an encrypted messaging application, messaged co-conspirators,

12 including defendants CARROLL and GAFFIELD, "death to israel death to

13 the usa death to colonizers death to settler-coloniasm [sic]."  In

14 response to defendant PAGE's message, defendant CARROLL stated,

15 "Death to them all, burn it all down [three emojis of a burning

16 heart]".

17     Overt Act No. 7:    On December 1, 2025, defendant CARROLL,

18 using an encrypted messaging application, messaged co-conspirators,

19 including defendants PAGE and GAFFIELD, "I identify as a terrorist"

20 and "I am a Hamas fangirl".

21     Overt Act No. 8:    On December 1, 2025, defendant GAFFIELD,

22 using an encrypted messaging application, messaged co-conspirators,

23 including defendants CARROLL and PAGE, "I am here to destroy Zionism

24 by any means necessary . . . Real Activism = Destroying Zionism By

25 Any Means, even if it's risky. If you arent willing to die for or

26 lose your freedom, then you're just another toy in the machine".

27     Overt Act No. 9:    On December 1, 2025, defendant CARROLL,

28 using an encrypted messaging application, messaged co-conspirators,

including defendants PAGE and GAFFIELD, "Glory to the martyrs and death to Israel [three emojis of salute sign]".

Overt Act No. 10:   On December 3, 2025, defendant CARROLL, using an encrypted messaging application, told the CHS "these fucking SJW peaceful protest libs are insane. Like it's wild to me that i've seen state violence enacted on some people like that and they STILL think they can keep going with peaceful protest bs and indirect routes."

Overt Act No. 11:   On December 3, 2025, defendant CARROLL, using an encrypted messaging application, sent the CHS a list of items that were needed to manufacture the bombs for the New Year's Eve attack plan, including "potassium nitrate," "raw charcoal (activated charcoal also works)," "sulfur powder," "common store brand backpacks," "PCV pipe."

Overt Act No. 12:   On December 3, 2025, defendant CARROLL, using an encrypted messaging application, told the CHS "with the list write it down when you have some time then i'll delete that message so it's no [sic] in the chat lol."

Overt Act No. 13:   On December 3, 2025, defendant CARROLL, using an encrypted messaging application, told the CHS that she already had procured other bomb-making material and items to test the bombs, including a sieve, digital scale, eye protection, gloves, and a respirator.

Overt Act No. 14:   On December 3, 2025, defendant CARROLL, using an encrypted messaging application, told the CHS that another "comrade" would procure other bomb-making material, including a fuse and detonator.

1    <u>Overt Act No. 15:</u>   On December 3, 2025, defendant CARROLL,
2    using an encrypted messaging application, told the CHS that "one of
3    the comrades just let me know a donor they have is down to fund
4    arms."

5    <u>Overt Act No. 16:</u>   On December 3, 2025, defendant PAGE, using
6    an encrypted messaging application, asked the CHS if the CHS was
7    interested in receiving firearms training, explaining his plan to
8    shoot U.S. Immigration and Customs Enforcement ("ICE") officials.
9    For example, in a voice message to the CHS, defendant PAGE stated "I
10   just had this daydream, I was just like, we're just patrolling or
11   whatever, and we're strapped right? And we see ICE trying to pull up
12   on somebody, or a group of people. And we just like, roll up on 'em,
13   like, strapped up, and we're like nah, get the fuck out of here . . .
14   They're gonna get shot if they try to do anything. Like, we shoot
15   first, we ask questions later. That's the policy. . . . I told that
16   to [defendant CARROLL].  [Defendant CARROLL] knows all about this and
17   [defendant CARROLL] was like yeah, let's fucking do it . . . But I'm
18   like, seriously, that is what's needed . . . Maybe if [ICE agents]
19   they're like, wait, I don't want to get fucking shot right now, they
20   ain't gonna do it. And if they still try to do it, well guess what?
21   Welcome to the dirt motherfucker."

22   <u>Overt Act No. 17:</u>   On December 3, 2025, defendant PAGE, using
23   an encrypted messaging application, told the CHS "lemme know when you
24   listen [to the voice message referenced in <u>Overt Act No. 16</u>] so I can
25   delete it".

26   <u>Overt Act No. 18:</u>   On December 5, 2025, defendant CARROLL,
27   using an encrypted messaging application, added the CHS to the "Order

28

of the Black Lotus" group chat, which defendant CARROLL described as "our group for everything radical".

Overt Act No. 19:   On or before December 5, 2025, defendant PAGE, using an encrypted messaging application, sent co-conspirators, including defendant CARROLL, instructions for the co-conspirators' plan to build and test explosive devices in the desert, which included coordinates to a remote location in the Lucerne Valley within the Mojave Desert.  The instructions included a screenshot of a satellite map with markings depicting "where we will set up camp (C on the map above) and where we will test (T on the map above)."  The instructions further stated, "the net [sic] day we will take my jeep NE to the T area for doing the thing. i will have a popup and table (both bigger than the last ones I brought, moon LOL) so we can setup under that and then use the hills for testing."  Moreover, the instructions explained that the group will only have two burner phones to use in case of emergencies and for directions on the way out.  Once everyone arrived, their phones would be put in a small cardboard box completely sealed with aluminum.  The phones would not be returned until the caravan was out of the campsite and back on the main road.

Overt Act No. 20:   On December 5, 2025, defendant CARROLL, using an encrypted messaging application, forwarded defendant PAGE's bomb testing instructions referenced in Overt Act No. 19 to the CHS.

Overt Act No. 21:   On December 7, 2025, defendant CARROLL purchased two five-pound bags of "Potassium Nitrate - 99% Pure Prilled $KNO_3$ - 5lbs - for Industrial & Technical Applications" via an online commerce website.

Overt Act No. 22:   On December 7, 2025, defendants CARROLL, PAGE, GAFFIELD, the CHS, and an individual the defendants believed was a co-conspirator, but who was, in fact, an undercover law enforcement employee (the "UCE"), met in person in Los Angeles, California to discuss the New Year's Eve Bombing Plot.  At the meeting, defendant CARROLL provided a written copy of the New Year's Eve Bombing Plot to defendant GAFFIELD and the UCE.

Overt Act No. 23:   During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant CARROLL told the co-conspirators, "what we're about to do, that's gonna, uh, be like a Luigi level situation" and that it was time for America to fall and that America falling will make Israel fall.

Overt Act No. 24:   During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant PAGE told the co-conspirators, "everything we're doing it, to be as clean as possible because 100,000% the FBI is gonna be like on that shit . . . Yeah, so we all know, what we're gettin' into."  Defendant PAGE also outlined steps the co-conspirators should take to avoid law enforcement detection, including covering their shoes with socks to cover shoeprints and burning their shoes after the operation.

Overt Act No. 25:   During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant CARROLL asked defendant GAFFIELD whether his "comrades" would be on his team for the New Year's Eve operation, to which defendant GAFFIELD responded that he would talk to his comrades.

Overt Act No. 26:   During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant CARROLL discussed purchasing the bomb-making materials, including ordering

11

potassium nitrate on an online commerce website, which was scheduled to be delivered on December 11, 2025.

Overt Act No. 27:    During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant PAGE also discussed purchasing bomb-making materials at an electronics store near his residence.

Overt Act No. 28:    During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant CARROLL discussed testing different types of bombs to determine which could "completely pulverize their [assigned] building" on New Year's Eve.

Overt Act No. 29:    During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendants CARROLL and PAGE stated they would add defendant GAFFIELD and the UCE to the "Black Lotus" group chat, which defendant CARROLL described as the radical faction of TILF, and defendant PAGE described as "super underground."

Overt Act No. 30:    During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendant GAFFIELD stated that after he sees the first boom in the desert, he's saying "Goodbye Israel."

Overt Act No. 31:    During the co-conspirators' December 7, 2025 in-person meeting referenced in Overt Act No. 22, defendants CARROLL and PAGE discussed plans for future attacks after the New Year's Eve bombings, namely, plans to attack ICE agents and government vehicles with pipe bombs beginning in or around January or February 2026, with CARROLL noting "that would definitely take some of them out and that would probably scare the rest of them."

<u>Overt Act No. 32:</u>  On December 8, 2025, defendant LAI, using an encrypted messaging application, told co-conspirators, including defendants CARROLL, PAGE, and GAFFIELD, that she would go to the desert to the test the bombs with the group and confirmed she had a cargo box on top of her vehicle that would fit camping gear. Defendant LAI also confirmed that she would bring PVC pipe to the bomb testing campsite.

<u>Overt Act No. 33:</u>  On December 8, 2025, defendant LAI, using an encrypted messaging application, sent photographs to co-conspirators, including defendants CARROLL, PAGE, and GAFFIELD, depicting string and shoelaces the co-conspirators could use as bomb fuses.

<u>Overt Act No. 34:</u>  On December 8, 2025, defendant GAFFIELD, using an encrypted messaging application, told co-conspirators on the "Black Lotus" group chat that he would go to the desert to the test the bombs "as long as I can get some supplies this time around".

<u>Overt Act No. 35:</u>  On December 9, 2025, defendant LAI, using an encrypted messaging application, told co-conspirators, including defendants CARROLL, PAGE, and GAFFIELD, that she would bring twine to the bomb testing campsite.

<u>Overt Act No. 36:</u>  On December 10, 2025, defendant PAGE, using an encrypted messaging application, told co-conspirators, including defendants CARROLL, GAFFIELD, and LAI, that he would acquire an ignition system (<u>i.e.</u>, starters) for the bombs.

<u>Overt Act No. 37:</u>  On December 10, 2025, in Irvine, California, defendant PAGE purchased pistol primers from a store dressed in a manner to obscure defendant PAGE's identity, namely, wearing a medical mask, gloves, ball cap and long sleeve shirt.

Overt Act No. 38:    On December 10, 2025, defendant PAGE, using an encrypted messaging application, told co-conspirators, including defendants CARROLL, GAFFIELD, and LAI, that "the other navigator, please have a burner phone (no phones besides burners and all phones except navigators to be wrapped in foil or a faraday bag for the entirety of the trip) and install OsmAnd. It is an open source maps, so no corporate tracking."

Overt Act No. 39:    On December 10, 2025, defendant GAFFIELD, using an encrypted messaging application, told co-conspirators, including defendants CARROLL, PAGE, and LAI: "I have a few burners / But im saving for the big event / The big party [celebrate emoji]."

Overt Act No. 40:    On December 10, 2025, defendant CARROLL, using an encrypted messaging application, told the CHS "I kind of had this notebook where I wrote down multiple plans that never happened or got delayed / so it's like / my terrorist diary / lmaooooo / I have to get rid of that."

Overt Act No. 41:    On December 11, 2025, defendant LAI picked up a package of "Potassium Nitrate – 99% Pure Prilled $KNO_3$ - 5lbs - for Industrial & Technical Applications" that defendant CARROLL ordered on December 7, 2025.

Overt Act No. 42:    On or before December 12, 2025, defendant LAI purchased multiple sizes of PVC pipe.

Overt Act No. 43:    On or before December 12, 2025, defendant LAI used a saw inside her residence to cut PVC pipe so the co-conspirators could use the material to build explosives.

Overt Act No. 44:    On the morning of December 12, 2025, defendants CARROLL, PAGE, GAFFIELD, and LAI traveled to in or around the Lucerne Valley in two vehicles to build and test explosive

14

devices.  Prior to leaving, the co-conspirators obtained and brought
with them bomb-making components, including various sizes of PVC
pipes, suspected potassium nitrate, charcoal, charcoal powder, sulfur
powder, gasoline, bottles, and material to be used as fuses.

Overt Act No. 45:  On December 12, 2025, on the way to the bomb
testing location, defendant CARROLL gave a detailed description of
the New Year's Eve bombing plot to LAI, including that testing the
devices the desert that day was meant as a test run for the New
Years' Eve bombing plot, stating: "What we're doing will be
considered a terrorist act."

Overt Act No. 46:  On December 12, 2025, on the way to the bomb
testing location, defendant PAGE discussed using a delayed fusing
device for the explosives once they arrived in the desert.

Overt Act No. 47:  On December 12, 2025, after arriving at the
co-conspirators' campsite in the desert, defendants CARROLL, PAGE,
and LAI set up the bomb-making materials on a table, and defendant
GAFFIELD assisted in setting up a tent behind the table to keep the
bomb-making materials and the group shaded from the sun.

Overt Act No. 48:  On December 12, 2025, after setting up the
bomb-making materials on the table in the desert, defendant LAI began
preparing the inside of a 5-inch PVC pipe and preparing a fuse for
the explosive bomb.

Overt Act No. 49:  On December 12, 2025, after setting up the
bomb-making materials on the table in the desert, defendants CARROLL,
PAGE, and LAI discussed grinding the precursor powders and braiding
string for a fuse device.

1                                  COUNT TWO

2                           [18 U.S.C. § 2339A]

3                          [DEFENDANT CARROLL]

4         Beginning on a date unknown, and continuing through on or about

5    December 12, 2025, in Los Angeles County, within the Central District

6    of California, and elsewhere, defendant AUDREY ILLEENE CARROLL, also

7    known as ("aka") "Asiginaak," aka "black moon," provided and

8    attempted to provide material support and resources, as that term is

9    defined in Title 18, United States Code, Section 2339A(b), including

10   personnel and tangible property, namely, herself and bomb-making

11   materials, knowing and intending that it be used in preparation for

12   and in carrying out a violation of Title 18, United States Code,

13   Section 844(i) (Malicious Damage or Destruction and Attempted Damage

14   and Destruction of a Building), and a violation of Title 18, United

15   States Code, Section 2332a(a)(2) (Use of a Weapon of Mass

16   Destruction).

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[18 U.S.C. § 2339A]

[DEFENDANT PAGE]

Beginning on a date unknown, and continuing through on or about December 12, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant ZACHARY AARON PAGE, also known as ("aka") "AK," aka "Ash Kerrigan," aka "Cthulu's Daughter," provided and attempted to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel and tangible property, namely, himself and bomb-making materials, knowing and intending that it be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 844(i) (Malicious Damage or Destruction and Attempted Damage and Destruction of a Building), and a violation of Title 18, United States Code, Section 2332a(a)(2) (Use of a Weapon of Mass Destruction).

COUNT FOUR

[18 U.S.C. § 2339A]

[DEFENDANT GAFFIELD]

Beginning on a date unknown, and continuing through on or about December 12, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant DANTE JAMES ANTHONY-GAFFIELD, also known as "Nomad," provided and attempted to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel, namely, himself, knowing and intending that it be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 844(i) (Malicious Damage or Destruction and Attempted Damage and Destruction of a Building), and a violation of Title 18, United States Code, Section 2332a(a)(2) (Use of a Weapon of Mass Destruction).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[18 U.S.C. § 2339A]

[DEFENDANT LAI]

Beginning on a date unknown, and continuing through on or about December 12, 2025, in Los Angeles County, within the Central District of California, and elsewhere, defendant TINA LAI, also known as "Kickwhere," provided and attempted to provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), including personnel and tangible property, namely, herself and bomb-making materials, knowing and intending that it be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 844(i) (Malicious Damage or Destruction and Attempted Damage and Destruction of a Building), and a violation of Title 18, United States Code, Section 2332a(a)(2) (Use of a Weapon of Mass Destruction).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SIX

[26 U.S.C. § 5861(d); 18 U.S.C. § 2(a)]

[ALL DEFENDANTS]

On or before December 12, 2025, in Los Angeles County and San Bernardino County, within the Central District of California, and elsewhere, defendants AUDREY ILLEENE CARROLL, also known as ("aka") "Asiginaak" and "Black Moon," ZACHARY AARON PAGE, aka "AK," aka "Ash Kerrigan," aka "Cthulu's Daughter," DANTE JAMES ANTHONY-GAFFIELD, aka "Nomad," and TINA LAI, aka "Kickwhere," each aiding and abetting the other, possessed firearms, namely, destructive devices, including any combination of parts intended for use in converting any device into an explosive bomb and "Molotov cocktail," knowing them to be destructive devices, as defined in Title 26, United States Code, Sections 5845(a)(8) and (f), and which had not been registered in the National Firearms Registration and Transfer Record as required by Title 26, United States Code, Chapter 53.

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 981(a)(1)(C), (a)(1)(G), and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), (a)(1)(G), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Five of this Indictment.

1.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  All right, title, and interest in all of the defendant's assets, foreign or domestic;

(b)  All right, title and interest in any assets, foreign or domestic, affording the defendant a source of influence over any entity or organization engaged in planning or perpetrating any Federal crime of terrorism against the United States, citizens or residents of the United States, or their property;

(c)  All right, title, and interest in any asset, foreign or domestic, acquired or maintained by the defendant with the intent and for the purpose of supporting, planning, conducting, or concealing any Federal crime of terrorism against the United States, citizens or residents of the United States, or their property;

(d)  All right, title, and interest in any asset, foreign or domestic, derived from, involved in, or used or intended to be used to commit any Federal crime of terrorism against the United States, citizens or residents of the United States, or their property;

(e)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a), (b), (c), or (d).

2.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[26 U.S.C. § 5872, 26 U.S.C. § 7302, and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, Section 5872 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count Six of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used;

(b)   All right, title, and interest in any firearm involved in any such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence;

//

//

1   (b) has been transferred, sold to, or deposited with a third party;

2   (c) has been placed beyond the jurisdiction of the court;

3   (d) has been substantially diminished in value; or (e) has been

4   commingled with other property that cannot be divided without

5   difficulty.

6

7                                       A TRUE BILL

8

9                                       /S/ _____
                                        Foreperson
10

11  BILAL A. ESSAYLI
    First Assistant United States
12  Attorney

13

14  IAN V. YANNIELLO
    Assistant United States Attorney
15  Chief, National Security Division

16  AMANDA B. ELBOGEN
    Assistant United States Attorney
17  National Security Division

18  DANIEL H. WEINER
    Assistant United States Attorney
19  Transnational Organized Crime
    Section
20

21

22

23

24

25

26

27

28